NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1341

JAMES LARSON

vs.

KEITH DEVINE, trustee.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Keith Devine (Keith), trustee of the Mary V. Larson Irrevocable Trust (trust), appeals from a judgment finding him in breach of fiduciary duty and awarding the plaintiff, James Larson (James), $50,000 in damages plus attorney's fees, interest, and costs.  We affirm.

Background.  Mary Larson (Mary) executed the trust in 2016. Two of her grandchildren, Keith and James Mark Devine (Mark), were initially cotrustees of the trust.  Keith and Mark are also beneficiaries of the trust, along with their uncle James.  The trust provided that on Mary's death, the trustees shall pay $50,000 to James if he is alive, and the "balance of the

---

[1] Of the Mary V. Larson Irrevocable Trust.

remaining trust principal" shall be divided and allocated in equal shares to Keith and Mark.  The trust further provided that

> "[n]otwithstanding the foregoing, upon the death of the Donor, the Trustee, as soon as practicable, unless otherwise unanimously agreed by [Keith and Mark] . . . , shall sell and convert into money any real property that the Trustee may own or have an interest in, and in connection therewith, [Keith and Mark] . . . shall have the first option to purchase any and all of the Donor's real property and, if so purchased, the purchase price shall be the fair market value of the property on the date of the Donor's death."

A house in Burlington was conveyed to the trust by quitclaim deed in 2016.  Keith and Mark, who had lived at the house since they were teenagers, continued to reside there through at least 2023 without paying rent.  After Mary's death in 2020, James made repeated demands on Keith and Mark for the distribution of $50,000 as provided in the trust, and eventually filed this action.  In response to James's motion for summary judgment, Keith stated that he did not oppose the distribution to James, but Mark disagreed.  The first judge granted partial summary judgment in favor of James, concluding that the cotrustees were liable in their fiduciary capacities to make the distribution to James and their failure to do so was a breach of the trust.  The judge also stated that "the estate includes real property that the Donor directed be sold and which, at least, may be collateral for a loan to generate the necessary funds."

2

After the second judge allowed James's motion to remove Mark as trustee, James and Keith cross-moved for entry of final judgment. Stating that the first judge's summary judgment order was "an adjudication of the issue presented in [James's] verified complaint," the second judge entered judgment on James's claims for declaratory and injunctive relief, as well as his claim for breach of fiduciary duty based on Keith's "ongoing failure to pay" the distribution. This appeal followed.

Discussion. Keith contends that the first judge erred in granting summary judgment to James because, as trustee, Keith had no obligation to pay a general cash bequest to James when there were no liquid funds available. In response to both James's complaint and motion for summary judgment, however, Keith stated that he did not oppose making the $50,000 distribution to James and in fact favored obtaining financing to pay it. In this civil case, Keith may not assert a position on appeal contrary to what he asserted at summary judgment. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006). Although Keith argues that he subsequently changed his position based on new legal advice and his inability to obtain a loan on the Burlington property, those circumstances do not excuse his failure to "put the judge on notice" that he "opposed summary judgment on this theory." Id. Keith's failure to advance his current position at summary judgment is particularly significant

3

because, as the second judge explained, the summary judgment order "was an adjudication of the issue presented in [James's] verified complaint," and "the plethora of pleadings" that followed "were wholly unnecessary."

We similarly reject Keith's argument that, by unsuccessfully moving the judge to order the sale of the property, James violated the trust's in terrorem or "no contest" clause and thus forfeited his beneficial interest in the trust. After Mark moved to dismiss the action on this theory, Keith filed an opposition stating that "the complaint does not violate the in terrorem clause because it does not seek to invalidate the trust, but rather to enforce its provisions." The first judge denied Mark's motion on that same basis. Keith asserts that he later changed his position on this issue "as the case wore on," but the judges were not required to reconsider an argument that Keith had unequivocally waived. See Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 312-313 (2009).

Even if we were to reach the merits of Keith's arguments, we would still affirm the judgment. Keith argues that, under the doctrine of abatement, if there are insufficient funds in an estate to pay a cash bequest, the bequest cannot be satisfied by reducing the value of a specific devise of real property. See Kaplan v. Leader, 297 Mass. 145, 146-147 (1937). Keith did not assert abatement at summary judgment, however, but rather only

4

"mentioned the possibility" that Mary's expenditure of cash before her death "may have adeemed" the bequest to James -- a suggestion that the first judge rejected because ademption applies to "a specific gift of property," not money.  See Wasserman v. Cohen, 414 Mass. 172, 174 (1993).  Keith concedes that ademption does not apply here.

As for the doctrine of abatement, which Keith raised after the summary judgment order was entered, it governs how assets are apportioned in an estate.  See G. L. c. 190B, § 3-902. Keith does not cite any case applying it to an irrevocable trust.  Even if the rules of abatement did apply, the trust did not make a specific devise of real property to Keith, Mark, or anyone else, but rather directed the trustees to make an unconditional distribution of $50,000 to James and to allocate the "balance of the remaining trust principal and any undistributed income" to Keith and Mark.  Keith's argument that the trust devised the Burlington property to him and Mark contradicts the plain language of Article 5.09, which directed the trustees to "as soon as practicable . . . sell and convert into money any real property that the Trustee may own or have an interest in."  That Article 5.09 also gave Keith and Mark the option, if they both agreed, to forestall the immediate sale of any real property belonging to the trust, or purchase it at fair market value if sold, does not transform that provision into a

specific devise of the Burlington property.  Furthermore, because the language of the trust is clear, Keith's reliance on extrinsic evidence purportedly showing that Mary did not want the property to be sold or mortgaged is unavailing.  See Ferri v. Powell-Ferri, 476 Mass. 651, 654 (2017).

The first and second judges were therefore correct in concluding that Keith violated his fiduciary duty to James by failing to make the unconditional distribution of $50,000 to him.[2]  Even if, as Keith asserts in his brief, he and Mark continue to agree not to sell the Burlington property, the first judge noted that "there are at least two alternatives to sale of the Property to satisfy the Trustees' obligation to pay [James]: refinancing the Property and obtaining a home equity loan."  The record further shows that, after the property was conveyed to the trust in 2016, Keith and Mark lived there until at least 2023 without paying rent, which then could have been used to pay the distribution apart from any refinancing or loan.

Moreover, under the trust provision that James is to be paid $50,000 and "the balance of the remaining trust principal" shall be distributed to Keith and Mark, Keith and Mark receive nothing until James is paid.  If either Keith or Mark (or both)

---

[2] They were also correct in concluding that James seeks to enforce rather than invalidate the provisions of the trust, and accordingly that the in terrorem clause has no application here.

6

withdraws their agreement not to sell, the property must be sold, some of the proceeds may be used to pay James, and then the remaining trust assets may be distributed to Keith and Mark.

Accordingly, we discern no error in either the orders for summary judgment or the entry of final judgment and award of reasonable attorney's fees and costs to James.[3]

Judgment affirmed.

By the Court (Sacks,
   Ditkoff & Toone, JJ.[4]),

Clerk

Entered:  September 18, 2024.

---

[3] James has requested attorney's fees and costs on the ground that the current appeal is frivolous.  After careful consideration of all relevant factors, we deny the request.

[4] The panelists are listed in order of seniority.